**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**DANIEL BRAND and MARCELA**
**CASTRO,**

                **Plaintiffs,**                **Case No. 24 CV 1759 (JMF)**

    **v.**

**TQTO CORP. and JOSEPH BEDWELL,**

                **Defendants.**
------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS**

JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Denise A. Schulman
32 Broadway, Suite 601
New York, NY 10004
212-688-5640

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.    NATURE OF THE CLAIMS ......................................................................... 1

II.   PROCEDURAL HISTORY AND BASIS FOR DEFAULT JUDGMENT ......................... 3

III.  THE WELL-PLEADED ALLEGATIONS OF THE COMPLAINT ESTABLISH
      DEFENDANTS' LIABILITY ......................................................................... 4

      A.    Statute Of Limitations ......................................................................... 4

      B.    FLSA Coverage ......................................................................... 5

      C.    Individual Liability ......................................................................... 5

      D.    Minimum Wage Claims ......................................................................... 7

      E.    Untimely Payment/Failure To Pay Agreed Rate ............................................ 7

      F.    Overtime Claims ......................................................................... 9

      G.    Misappropriated Tips ......................................................................... 10

      H.    Spread Of Hours ......................................................................... 10

      I.    Wage Notices And Wage Statements ........................................................ 10

IV.   CALCULATION OF DAMAGES ..................................................................... 11

      A.    An Inquest Into Damages Is Unnecessary ................................................. 11

      B.    Burden Of Proof ......................................................................... 12

      C.    Summary Of Damages Sought ............................................................. 13

            i.    Unpaid agreed rate and overtime ................................................... 14

            ii.   Minimum wage ......................................................................... 15

            iii.  Spread of hours ......................................................................... 15

            iv.   Misappropriated tips ................................................................... 15

            v.    Liquidated damages ................................................................... 16

            vi.   Penalties for N.Y. Lab. L. § 195 violations ..................................... 18

vii. Prejudgment interest ................................................................................................ 18

viii. 15% penalty if judgment is not timely paid ............................................................ 19

V.    ATTORNEYS' FEES AND COSTS .................................................................................... 19

VI.   CONCLUSION ...................................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Accosta v. Lorelei Events Grp. Inc.*, No. 17 CV 07804,
    2022 U.S. Dist. LEXIS 11494 (S.D.N.Y. Jan. 21, 2022)...................................12

*Aguilar v. Calexico Cinco LLC*, No. 22 CV 6345,
    2024 U.S. Dist. LEXIS 115935 (E.D.N.Y. June 28, 2024) .............................8

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ..........................................12

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008)...........................................................................19

*Bazinett v. Pregis LLC*, No. 23 CV 790,
    2024 U.S. Dist. LEXIS 33585 (S.D.N.Y. Feb. 27, 2024)................................8

*Beh v. Cmty. Care Companions*, No. 19 CV 1417,
    2021 U.S. Dist. LEXIS 197316 (W.D.N.Y. Feb. 1, 2021) ..............................7

*Bemejo v. Shaker Contrs., Corp.*, No. 22 Civ. 1427,
    2022 U.S. Dist. LEXIS 213831 (S.D.N.Y. Nov. 28, 2022).............................17

*Birthwright v. Advance Stores Co.*, No. 22 CV 593,
    2024 U.S. Dist. LEXIS 113733 (E.D.N.Y. June 27, 2024) ..............................8

*Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (N.Y. App. Div. 1st Dep't 2013)..... 5,6

*Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725,
    2010 U.S. Dist. LEXIS 109373 (S.D.N.Y. Sept. 30, 201)................................19

*Caputi-Richards v. Chuck's Vintage, Inc.*, No. 22 Civ. 6409,
    2023 U.S. Dist. LEXIS 62954, (S.D.N.Y. Apr. 11, 2023)................................13,16,18,19

*Cavalotti v. Daddyo's BBQ, Inc.*, No. 15 Civ. 6469,
    2018 U.S. Dist. LEXIS 154918 (E.D.N.Y. Sept. 8, 2018).................................7,9

*Cement & Concrete Workers Dist. Council Welfare Fund & Metro Found. Contrs. Inc.*,
    699 F.3d 230 (2d Cir. 2012)..............................................................................4,11

*Chen v. New Fresco Tortillas Taco LLC*, No. 15 Civ. 2158,
    2015 U.S. Dist. LEXIS 125949 (S.D.N.Y. Sept. 21, 2015)..............................12

*Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240 (S.D.N.Y. 2021) ............................16

*Cooke v. Frank Brunckhorst Co., LLC*, No. 23 CV 633,
2024 U.S. Dist. LEXIS 89669 (E.D.N.Y. May 18, 2024) ................................. 8

*Covington v. Childtime Childcare, Inc.*, No. 23 CV 210,
2024 U.S. Dist. LEXIS 102155 (N.D.N.Y. June 10, 2024) ............................ 8

*Flanigan v. Vulcan Power Group, LLC*, 642 F. App'x 46 (2d Cir. 2016) ................... 6

*Galante v. Watermark Servs. IV LLC*, No. 23 CV 6227,
2024 U.S. Dist. LEXIS 40337 (W.D.N.Y. Mar. 7, 2024) ................................. 9

*Galvez v. 800 Ginza Sushi, Inc.*, No. 19 Civ. 8549,
2022 U.S. Dist. LEXIS 43523 (S.D.N.Y. Mar. 11, 2022) ................................ 12

*Gamboa v. Regeneron Pharms., Inc.*, No. 22 CV 10605,
2024 U.S. Dist. LEXIS 33585 (S.D.N.Y. Feb. 27, 2024) ................................. 8

*Garcia v. Skechers USA Retail, LLC*, No. 23 CV 1055,
2024 U.S. Dist. LEXIS 46109 (E.D.N.Y. Mar. 15, 2024) ................................ 8

*Gonzalez v. Jane Roe Inc.*, No. 10 CV 1000,
2014 U.S. Dist. LEXIS 11617 (E.D.N.Y. Aug. 19, 2014) ................................ 7

*Gonzalez v. Jane Roe Inc.*, No. 10 CV 1000,
2014 U.S. Dist. LEXIS 117194 (E.D.N.Y. July 24, 2014) ............................... 7

*Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712
(N.Y. App. Div. 2d Dep't 2024) ................................................................. 8

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ......................... 6

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) .................................... 5,6

*Jacome v. Optical 49*, No. 20 CV 2615,
2021 U.S. Dist. LEXIS 130005 (E.D.N.Y. July 9, 2021) ................................ 4,5

*Juarez v. 156-40 Grill LLC*, No. 15 CV 5018,
2023 U.S. Dist. LEXIS 211528 (E.D.N.Y. Nov. 28, 2023) .............................. 9

*Kim v. Kum Gang, Inc.*, No. 12 Civ. 6344,
2015 U.S. Dist. LEXIS 39095 (S.D.N.Y. Mar. 19, 2015) ................................ 5

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) ......................... 12

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) .......................... 21

*Levy v. Endeavor Air Inc.*, No. 21 CV 4387,
   2024 U.S. Dist. LEXIS 60332 (E.D.N.Y. Mar. 29, 2024) ................................. 8

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*,
   450 F.3d 91 (2d Cir. 2006) .................................................................................... 20

*Pena v. Metro. Wireless Anandpur Inc.*, No. 21 CV 2239,
   2021 U.S. Dist. LEXIS 211935 (S.D.N.Y. Nov. 1, 2021) ................................. 11,12,18,19

*Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224 (2d Cir. 2006) ........................... 20

*Sarmiento v. Flagge Contracting Inc.*, No. 22 CV 9718,
   2024 U.S. Dist. LEXIS 33492 (S.D.N.Y. Feb. 27, 2024) ................................... 8

*Schalaudek v. Chateau 20th St. LLC*, No. 16 CV 11,
   2017 U.S. Dist. LEXIS 26272 (S.D.N.Y. Feb. 24, 2017) ................................... 12,13

*Solano v. Andiamo Café Corp.*, No. 19 CV 03264,
   2020 U.S. Dist. LEXIS 214754 (S.D.N.Y. Nov. 17, 2020) ............................... 7

*Syed v. S&P Pharm. Corp.*, No. 21 CV 6000,
   2023 U.S. Dist. LEXIS 49653 (E.D.N.Y. Mar. 23, 2023) ................................. 9

*Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012) ......................... 7

*Vega v. CM & Assocs. Constr. Mgmt., LLC*,
   175 A.D.3d 1144 (N.Y. App. Div. 1st Dept 2019) ............................................. 8,17

*Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219 (S.D.N.Y. 2020) ............. 13,16

*Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241 (E.D.N.Y. 2015) ...................................... 6

*Zachary v. BG Retail, LLC*, No. 22 CV 10521,
   2024 U.S. Dist. LEXIS 24097 (S.D.N.Y. Feb. 12, 2024) ................................... 9

**Statutes, Rules, and Regulations**

28 U.S.C. § 1331 .......................................................................................................... 4

28 U.S.C. § 1367 .......................................................................................................... 4

29 C.F.R. § 516.2 ......................................................................................................... 12

29 C.F.R. § 541.100 ..................................................................................................... 9

29 C.F.R. § 541.200 ..................................................................................................... 9

29 C.F.R. § 541.600 ................................................................................... 9

29 C.F.R. § 541.602 ................................................................................... 9

29 U.S.C. § 203 ..................................................................................... 2,10

29 U.S.C. § 206 ....................................................................................... 2,7

29 U.S.C. § 207 ................................................................................... 2,9,15

29 U.S.C. § 216 ............................................................................... 3,16,19

29 U.S.C. § 255 ......................................................................................... 4

29 U.S.C. § 260 ....................................................................................... 16

Art. III, U.S. Const. ................................................................................. 4

Fed. R. Civ. P. 4 ...................................................................................... 3,4

Fed. R. Civ. P. 55 .................................................................................. 1,11

N.Y. Bus. Corp. L. § 306 ......................................................................... 3

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4 .............................. 2,9,15

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 .................................. 10

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1 .................................. 12

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.2 .................................... 9

N.Y. C.P.L.R. § 301 ................................................................................. 4

N.Y. C.P.L.R. § 302 ................................................................................. 4

N.Y. C.P.L.R. § 308 ................................................................................. 3

N.Y. C.P.L.R. § 311 ................................................................................. 3

N.Y. C.P.L.R. § 5001 ............................................................................. 18

N.Y. C.P.L.R. § 5004 ............................................................................. 18

N.Y. Lab. L. § 191 .......................................................................... 3,7,8,9

N.Y. Lab. L. § 195 ................................................................................... 3,11,18

N.Y. Lab. L. § 196-d .................................................................................. 2,10

N.Y. Lab. L. § 198 .................................................................................... *passim*

N.Y. Lab. L. § 652 ..................................................................................... 2,7

N.Y. Lab. L. § 661 ...................................................................................... 12

N.Y. Lab. L. § 663 .................................................................................... *passim*

Plaintiffs Daniel Brand and Marcela Castro (collectively, "Plaintiffs") submit this memorandum in support of their motion for entry of a default judgment against Defendants TQTO Corp. and Joseph Bedwell (collectively, "Defendants") pursuant to Fed. R. Civ. P. 55(b).[1]

## I.    NATURE OF THE CLAIMS

Plaintiffs commenced this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action on March 7, 2024.  (Dkt. No. 1.)  Plaintiffs' complaint[2] and declarations allege the following facts.  TQTO Corp. owns and operates TQTO restaurant in downtown Manhattan. (Compl. ¶ 4.)  Defendant Bedwell is the owner and manager of TQTO.  He hired Plaintiffs and set their schedules and pay rates during their employment.  (Compl. ¶ 6; Brand Decl. ¶¶ 3, 6-7; Castro Decl. ¶¶ 3, 7-8.)  Specifically, Bedwell agreed to pay Plaintiff Castro $20 per hour and Plaintiff Brand $18 per hour.  (Brand Decl. ¶ 6; Castro Decl. ¶ 7.)  In addition, Bedwell signed Plaintiffs' paychecks.  (Brand Decl. ¶ 16; Castro Decl. ¶ 15.)

Plaintiff Castro was employed by Defendants as a line cook from October 17, 2022 to July 29, 2023.  (Compl. ¶ 8; Castro Decl. ¶¶ 2-3.)  Plaintiff Castro's primary job duty was to prepare food for customers.  (Compl. ¶ 10.)  Plaintiff Castro also sometimes worked as a cashier.  In that capacity, she regularly processed credit card payments.  (Castro Decl. ¶¶ 5-6.)  Plaintiff Brand was employed by Defendants as a cashier from December 17, 2022 to July 29, 2023.  (Compl. ¶ 9; Brand Decl. ¶¶ 2-3.)  Plaintiff Brand's primary job duties were to take food orders from customers, charge customers and process their payments, and serve customers the food that they ordered. (Compl. ¶ 11; Brand Decl. ¶ 4.)  Because most customers paid by credit card, Plaintiff Brand

---

[1] With this memorandum, Plaintiffs submit the July 11, 2024 declaration of Denise A. Schulman ("Schulman Decl.") and exhibits thereto ("Schulman Ex. [number]"), the July 9, 2024 declaration of Daniel Brand ("Brand Decl.") and exhibits thereto ("Brand Ex. [number]"), the July 7, 2024 declaration of Marcela Castro ("Castro Decl.") and exhibits thereto ("Castro Ex. [number]"), and the June 21, 2024 declaration of Daniel Brand ("Brand June 21, 2024 Decl.") and exhibit thereto.

[2] Plaintiffs' complaint is Schulman Ex. 1.

regularly processed credit card payments.  (Brand Decl. ¶ 5.)

Both Plaintiffs regularly worked more than 40 hours per week for Defendants.  For example, in the week ending July 29, 2023 Plaintiff Castro worked 44.95 hours, and in the week ending July 22, 2023, Plaintiff Brand worked 41.5 hours.  (Compl. ¶¶ 12-14.)  Defendants did not maintain a regular payday for Plaintiffs.  When Defendants paid Plaintiffs, Plaintiffs were paid more than seven days after the end of the workweek about half the time.  (Brand Decl. ¶¶ 18-19; Castro Decl. ¶¶ 17-18.)  Defendants did not pay Plaintiff Castro for the week June 25 to July 1, 2023 until August 30, 2023.  (Castro Decl. ¶ 22.)  Defendants have not paid Plaintiff Castro at for the period from July 2 to July 29, 2023, even though she worked every week in that period. (Compl. ¶ 16; Castro Decl. ¶¶ 21-22; Castro Ex. 1.)  Defendants did not pay Plaintiff Brand for the week June 4 to 10, 2023 until August 30, 2023.  (Brand Decl. ¶ 24.)  Defendants have not paid Plaintiff Brand at all for the period from June 11 to July 29, 2023, even though he worked every week in that period.  (Compl. ¶ 15; Brand Decl. ¶¶ 23-24; Brand Ex. 1.)  Although Plaintiffs both worked shifts that lasted longer than 10 hours, Defendants never paid them a spread of hours premium.  (Compl. ¶¶ 18-19; Brand Decl. ¶ 22; Castro Decl. ¶ 20.)  In addition, Defendants retained credit tips that customers left for Plaintiffs.  (Compl. ¶ 17; Brand Decl. ¶¶ 8-9; Castro Decl. ¶ 9.)  Finally, Defendants never provided Plaintiffs with wage statements or wage notices. (Compl. ¶¶ 20-21.)

Based on these facts, Plaintiffs' complaint alleges that Defendants violated (1) the minimum wage requirements of the FLSA and NYLL, 29 U.S.C. § 206; N.Y. Lab. L. § 652; (2) the overtime requirements of the FLSA, NYLL, and related regulations, 29 U.S.C. § 207; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; (3) the FLSA and NYLL's prohibition of employer retention of gratuities, 29 U.S.C. § 203(m); N.Y. Lab. L. § 196-d; (4) the NYLL's agreed

rate/timely payment of wages requirement, N.Y. Lab. L. § 191; and (5) the NYLL's wage notice/statement requirements, N.Y. Lab. L. § 195. (Compl. ¶¶ 22-71.)

Plaintiffs now seek an award of damages, including liquidated damages and penalties available under applicable laws; costs of action incurred herein; attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. §§ 198, 663 and other applicable statutes; pre-judgment interest, as provided by law, and such other and further legal and equitable relief as this Court deems necessary, just and proper.

## II.    PROCEDURAL HISTORY AND BASIS FOR DEFAULT JUDGMENT

This action was commenced on March 7, 2024 by the filing of the complaint. (Dkt. No. 1.) The summons and complaint were served on Defendant TQTO Corp. on March 26, 2024 by personal serving an authorized representative of the New York Secretary of State. (Schulman Decl. ¶¶ 3, 5; Schulman Ex. 2.) This method of service was proper pursuant to Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A) (service as permitted by state law in the state where this Court sits); N.Y. C.P.L.R. § 311(a)(1) (a corporation may be served as authorized in N.Y. Bus. Corp. L. § 306); N.Y. Bus. Corp. L. § 306(b)(1) (corporation may be served via service on the New York Secretary of State). The summons and complaint were served on Defendant Joseph Bedwell by personally serving German Escobar, a person of suitable age and discretion, at Bedwell's actual place of business, TQTO Restaurant at 99 MacDougal Street, New York, NY 10012, on May 17, 2024 and mailing the summons and complaint to Bedwell at his actual place of business on May 21, 2024. (Schulman Decl. ¶ 6; Schulman Ex. 4.) This method of service was proper pursuant to Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2). Proof of service was filed for all Defendants. (Dkt. Nos. 8, 9.)

The Court has subject matter jurisdiction over the FLSA claims in this action pursuant to

28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiffs' New York Labor Law claims because they are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367(a).  The Court has personal jurisdiction over the Defendants because they were properly served and are subject to the jurisdiction of a court of general jurisdiction in the state of New York.  Fed. R. Civ. P. 4(k).  Specifically, both Defendants conduct business in the state of New York, TQTO Corp. is a New York corporation, and Bedwell is a New York resident.  (Schulman Ex. 3; Schulman Decl. ¶¶ 4, 8.)  N.Y. C.P.L.R. §§ 301, 302; *Jacome v. Optical 49*, No. 20 CV 2615, 2021 U.S. Dist. LEXIS 130005, at *10-11 (E.D.N.Y. July 9, 2021).

To date, Defendants have not answered the Complaint or otherwise appeared in this action.  On June 24, 2024, the Acting Clerk of Court issued a certificate of default as to both Defendants.  (Dkt. No. 21; Schulman Ex. 5.)  Defendants are not minors or incompetents nor, to the best of Plaintiffs' knowledge, members of the military.  (Schulman Decl. ¶ 4; Schulman Ex. 3; Brand June 21, 2024 Decl. ¶¶ 2-9.)

## III.    THE WELL-PLEADED ALLEGATIONS OF THE COMPLAINT ESTABLISH DEFENDANTS' LIABILITY

"A party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]"  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230 (2d Cir. 2012) (cleaned up).  The allegations in the complaint establish liability on all of Plaintiffs' claims.

### A.  Statute Of Limitations

The statute of limitations for FLSA claims is two or three years, depending on whether the violations were willful.  29 U.S.C. § 255(a).  The statute of limitations for NYLL claims is six years.  N.Y. Lab. L. §§ 198(3), 663(3).  Here, all of Plaintiffs' claims arose within two years of

4

the commencement of the action, so all of their claims are timely.  (Brand Decl. ¶ 2; Castro Decl. ¶ 2.)

### B.  FLSA Coverage

The FLSA applies to employers who satisfy the requirements for what is referred to as enterprise or individual coverage.  *See Jacome*, 2021 U.S. Dist. LEXIS 130005, at *15.  Enterprise coverage applies to employers whose annual gross volume of sales is at least $500,000 and has "employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce[.]"  29 U.S.C. § 203(s).  "The individual coverage test considers the employment actions of each plaintiff to determine whether the employees themselves are engaged in commerce." *Jacome*, 2021 U.S. Dist. LEXIS 130005, at *16 (internal quotation marks omitted).  Here, Plaintiffs satisfy the individual coverage test because, as set forth in their declarations, they regularly processed credit card payments.[3]  (Brand Decl. ¶¶ 4-5; Castro Decl. ¶¶ 5-6.)  *See Jacome*, 2021 U.S. Dist. LEXIS 130005, at *20-21; *Kim v. Kum Gang, Inc.*, No. 12 Civ. 6344, 2015 U.S. Dist. LEXIS 39095, at *76-77 n.48 (S.D.N.Y. Mar. 19, 2015).

### C.  Individual Liability

Defendant Bedwell is individually liable for the FLSA and NYLL claims asserted in the complaint.  Individual defendants are liable for FLSA and NYLL violations if they are employers. *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) (FLSA); *Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (N.Y. App. Div. 1st Dep't 2013) (NYLL).  To determine whether an individual is an employer under the FLSA, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by

---

[3] Enterprise coverage does not apply here because the complaint's allegation that TQTO had more than $500,000 in annual sales is incorrect.

the facts of each case." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal citation omitted). "Because the 'economic reality' of a relationship drives the analysis as to whether it constitutes an employer-employee relationship for the purpose of FLSA, the determination must be made on a case-by-case basis in light of the totality of the circumstances, and cannot rest on technical concepts." *Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 253 (E.D.N.Y. 2015). Relevant factors (the "*Carter* factors") include but are not limited to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104 (internal quotation marks omitted). A court should also consider whether the alleged employer has operational control over employees. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id*. at 110.

New York Labor Law ("NYLL") has a similar standard for determining whether an individual is an employer. "Whether an individual qualifies as an employer [under the NYLL] depends on whether the particular defendant had the power to hire and fire employees, whether he supervised and controlled the conditions of employment, and whether he determined rates and methods of payment, and the like." *Flanigan v. Vulcan Power Group, LLC*, 642 F. App'x 46, 51 (2d Cir. 2016); *see also Bonito*, 106 A.D.3d at 626 (considering the "economic realities of the case" and finding that plaintiffs stated a claim against individual defendant who allegedly "hired and fired employees, supervised and controlled employees' work schedules, determined the method and rate of pay, kept employment records, and approved any vacations").

Here, Bedwell hired employees, including Plaintiffs; set Plaintiffs' pay rates; paid Plaintiff

(or refused to do so); and set Plaintiffs' schedules.  (Compl. ¶ 6; Brand Decl. ¶¶ 3, 6-8, 15-16, 24; Castro Decl. ¶¶ 3, 7-8, 13-15, 22.)  This is sufficient to establish his individual liability under both statutes.  *E.g.*, *Solano v. Andiamo Café Corp.*, No. 19 CV 03264, 2020 U.S. Dist. LEXIS 214754, at *6-8 (S.D.N.Y. Nov. 17, 2020); *Cavalotti v. Daddyo's BBQ, Inc.*, No. 15 Civ. 6469, 2018 U.S. Dist. LEXIS 154918, at *28-31 (E.D.N.Y. Sept. 8, 2018); *Gonzalez v. Jane Roe Inc.*, No. 10 CV 1000, 2014 U.S. Dist. LEXIS 117194, at *12-13 (E.D.N.Y. July 24, 2014), *adopted by* 2014 U.S. Dist. LEXIS 11617 (Aug. 19, 2014).

### D.  Minimum Wage Claims

The FLSA and NYLL both require employers to pay employees a minimum wage for all hours worked.  29 U.S.C. § 206; N.Y. Lab. L. § 652.  In 2022 and 2023, the FLSA minimum wage was $7.25 per hour, and the NYLL minimum wage for New York City employers was $15 per hour.  29 U.S.C. § 206(a)(1)(C); N.Y. Lab. L. § 652(1)(a).  The complaint and declarations allege that each Plaintiff worked multiple weeks for Defendants for which Defendants did not pay them at all.  (Compl. ¶¶ 15-16; Brand Decl. ¶¶ 23-24; Brand Ex. 1; Castro Decl. ¶¶ 21-22; Castro Ex. 1.)  Therefore, Defendants did not satisfy the minimum wage requirements of the FLSA and NYLL.

### E.  Untimely Payment/Failure To Pay Agreed Rate

N.Y. Lab. L. § 191 requires employers to pay manual workers on a weekly basis and no later than seven days "after the end of the week in which the wages are earned" and to pay most other employees "in accordance with the agreed terms of employment, but not less frequently than semi-monthly."  N.Y. Lab. L. § 191.  Restaurant workers like Plaintiffs are manual workers. *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012); *see also Beh v. Cmty. Care Companions*, No. 19 CV 1417, 2021 U.S. Dist. LEXIS 197316, at *7 (W.D.N.Y. Feb. 1,

2021) (noting that "cooks, wait staff, . . . and pizzeria workers have been found to be 'manual workers'" under the NYLL). However, Defendants frequently paid them more than a week after the end of the workweek in which the wages were earned. (Brand Decl. ¶¶ 18-19, 24; Castro Decl. ¶¶ 17-18, 22.) The First Department of the New York Appellate Division has held that there is a private right of action for claims of untimely payment of wages under N.Y. Lab. L. § 191(1)(a). *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (2019). While the Second Department has since held that there is no private right of action for N.Y. Lab. L. § 191 claims when a manual worker is paid in full on an "agreed-upon, biweekly pay schedule[,]" *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 719 (2024), that was not the case here, where Plaintiffs did not have a set pay date and were at times paid less frequently than biweekly. (Brand Decl. ¶ 19; Castro Decl. ¶ 18.) In any event, virtually every federal court that decided the issue since *Grant* was decided has continued to follow *Vega*. *See Aguilar v. Calexico Cinco LLC*, No. 22 CV 6345, 2024 U.S. Dist. LEXIS 115935, at *23-27 (E.D.N.Y. June 28, 2024); *Birthwright v. Advance Stores Co.*, No. 22 CV 593, 2024 U.S. Dist. LEXIS 113733 (E.D.N.Y. June 27, 2024); *Covington v. Childtime Childcare, Inc.*, No. 23 CV 210, 2024 U.S. Dist. LEXIS 102155 (N.D.N.Y. June 10, 2024); *Cooke v. Frank Brunckhorst Co., LLC*, No. 23 CV 6333, 2024 U.S. Dist. LEXIS 89669 (E.D.N.Y. May 18, 2024); *Levy v. Endeavor Air Inc.*, No. 21 CV 4387, 2024 U.S. Dist. LEXIS 60332, at *3, 6 (E.D.N.Y. Mar. 29, 2024) (characterizing the *Grant* holding as "less-than-convincing" and a defendant's arguments for following *Grant* as "anemic"); *Garcia v. Skechers USA Retail, LLC*, No. 23 CV 1055, 2024 U.S. Dist. LEXIS 46109 (E.D.N.Y. Mar. 15, 2024); *Bazinett v. Pregis LLC*, No. 23 CV 790, 2024 U.S. Dist. LEXIS 44869 (N.D.N.Y. Mar. 14, 2024); *Gamboa v. Regeneron Pharms., Inc.*, No. 22 CV 10605, 2024 U.S. Dist. LEXIS 33585 (S.D.N.Y. Feb. 27, 2024); *Sarmiento v. Flagge Contracting Inc.*, No. 22 CV 9718, 2024 U.S. Dist. LEXIS

33492 (S.D.N.Y. Feb. 27, 2024); *Zachary v. BG Retail, LLC*, No. 22 CV 10521, 2024 U.S. Dist. LEXIS 24097 (S.D.N.Y. Feb. 12, 2024); *but see Galante v. Watermark Servs. IV LLC*, No. 23 CV 6227, 2024 U.S. Dist. LEXIS 40337 (W.D.N.Y. Mar. 7, 2024) (following *Grant*). The Court should likewise enter judgment as to Plaintiffs' N.Y. Lab. L. § 191 claims for untimely payment of wages.

In addition to requiring the timely payment of wages, courts have interpreted N.Y. Lab. L. § 191 to provide a cause of action to recover unpaid wages for non-overtime hours at the agreed pay rate, as opposed to the minimum wage rate. *See, e.g.*, *Juarez v. 156-40 Grill LLC*, No. 15 CV 5081, 2023 U.S. Dist. LEXIS 211528, at *8 (E.D.N.Y. Nov. 28, 2023); *Cavalotti*, 2018 U.S. Dist. LEXIS 154918, at *34-36. Accordingly, by failing to pay Plaintiffs at all for certain hours worked, Defendants violated N.Y. Lab. L. § 191 and are liable for payment of those hours at Plaintiffs' agreed rates ($22 per hour for Castro and $18 per hour for Brand). (Brand Decl. ¶¶ 6-7; Castro Decl. ¶¶ 7-8.)

### F.  Overtime Claims

The FLSA and New York law both require employers to pay non-exempt employees[4] one and a half times their regular rate for hours worked in excess of 40 per week. 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *Cavalotti*, 2018 U.S. Dist. LEXIS 154918, at *41. The complaint identifies a specific week when each Plaintiff worked more than 40 hours and was not paid any compensation. (Compl. ¶¶ 13-16; Brand ¶ 24; Brand Ex. 1; Castro Decl. ¶ 22; Castro Ex. 1.) Therefore, Defendants did not satisfy the overtime requirements of the FLSA and

[4] The overtime exemptions are affirmative defenses for which Defendants bear the burden of proof. *Syed v. S&P Pharm. Corp.*, No. 21 CV 6000, 2023 U.S. Dist. LEXIS 49653, at *9 (E.D.N.Y. Mar. 23, 2023). There are no allegations in the complaint that would support a finding that Plaintiffs were exempt employees. For example, the complaint does not allege that either Plaintiff was paid on a salary basis, which is a necessary condition for the most commonly applied overtime exemptions. 29 C.F.R. § 541.100, 541.200, 541.600, 541.602; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.2(c)(1).

9

New York law.

### G.  Misappropriated Tips

Both the FLSA and NYLL prohibit employers from retaining employees' tips, regardless of the employee's rate of pay.  29 U.S.C. § 203(m)(2)(B); N.Y. Lab. L. § 196-d.  Plaintiffs allege that TQTO's customers left credit card tips for Plaintiffs that Defendants did not distribute to them, which is a plain violation of the statutes.  (Compl. ¶ 17; Brand Decl. ¶¶ 8, 17; Castro Decl. ¶¶ 9, 16.)

### H.  Spread Of Hours

New York law requires restaurant employers to pay all non-exempt employees "spread of hours" compensation, which is an hour's pay at the full New York minimum wage for each workday that lasts longer than 10 hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. Plaintiffs allege that Defendants never paid them spread of hours compensation when their workdays lasted longer than 10 hours and identifies a specific shift for each Plaintiff that lasted more than 10 hours, establishing liability on the spread of hours claim.  (Compl. ¶¶ 18-19; Brand Ex. 1; Castro Ex. 1.)

### I.  Wage Notices And Wage Statements

Employers are required to give employees "at the time of hiring" a notice written in English and each employee's primary language stating:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; [and] the telephone number of the employer. . . . For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate

and overtime rate of pay[.]

N.Y. Lab. L. § 195(1)(a).  Defendants never provided Plaintiffs with any type of wage notice, in

violation of the statute.  (Compl. ¶ 21.)

Employers are also required to furnish employees with written statements accompanying

every payment of wages listing:

> the dates of work covered by that payment of wages; name of employee; name of
> employer; address and phone number of employer; rate or rates of pay and basis
> thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or
> other; gross wages; deductions; allowances, if any, claimed as part of the minimum
> wage; and net wages.  For all employees who are not exempt from overtime
> compensation as established in the commissioner's minimum wage orders or
> otherwise provided by New York state law or regulation, the statement shall include
> the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number
> of regular hours worked, and the number of overtime hours worked.

N.Y. Lab. L. § 195(3).  Defendants did not provide Plaintiffs with any such statements, in violation

of the statute.  (Compl. ¶ 20.)

## IV.    CALCULATION OF DAMAGES

### A.  An Inquest Into Damages Is Unnecessary

A damages inquest in not necessary in this case.  The Second Circuit has explained:

> Upon entry of default, a plaintiff's claims for damages generally must be
> established in an evidentiary proceeding at which the defendant is afforded the
> opportunity to contest the amount claimed.  There must be an evidentiary basis for
> the damages sought by plaintiff, and a district court may determine there is
> sufficient evidence either based upon evidence presented at a hearing or upon a
> review of detailed affidavits and documentary evidence.  While Rule 55(b)(2)
> permits the district court to conduct a hearing to determine damages, such a hearing
> is not mandatory.

*Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234 (cleaned up).  Here,

Plaintiffs have submitted detailed declarations and supporting documents which provide a

sufficient evidentiary basis for the calculation of damages without the need for an inquest hearing.

*See Pena v. Metro. Wireless Anandpur Inc.*, No. 21 CV 2239, 2021 U.S. Dist. LEXIS 211935, at

*4-5 (S.D.N.Y. Nov. 1, 2021); *Schalaudek v. Chateau 20th St. LLC*, No. 16 CV 11, 2017 U.S.

Dist. LEXIS 26272, at *11-12 (S.D.N.Y. Feb. 24, 2017); *Chen v. New Fresco Tortillas Taco LLC*,

No. 15 Civ. 2158, 2015 U.S. Dist. LEXIS 125949, at *4 (S.D.N.Y. Sept. 21, 2015).

###### B.  Burden Of Proof

Under both the FLSA and NYLL, a plaintiff bears the burden of proving that he or

performed work for which he or she was improperly compensated.  *Kuebel v. Black & Decker Inc.*,

643 F.3d 352, 361 (2d Cir. 2011); *Accosta v. Lorelei Events Grp. Inc.*, No. 17 CV 07804, 2022

U.S. Dist. LEXIS 11494, at *9 (S.D.N.Y. Jan. 21, 2022).  However, both statutes also require

employers to maintain records of, *inter alia*, employees' hours worked and compensation.  *E.g.*,

29 C.F.R. § 516.2; N.Y. Lab. L. § 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1.  Under

the FLSA, where an employer fails to maintain accurate records,

> An employee has carried out his burden [of establishing damages] if he proves that
> he has in fact performed work for which he was improperly compensated and if he
> produced sufficient evidence to show the amount and extent of that work as a matter
> of just and reasonable inference. The burden then shifts to the employer to come
> forward with evidence of the precise amount of work performed or with evidence
> to negative the reasonableness of the inference to be drawn from the employee's
> evidence. If the employer fails to produce such evidence, the court may then award
> damages to the employee, even though the result be only approximate."

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (1946).  "A similar standard applies

to unpaid compensation claims under the NYLL."  *Pena*, 2021 U.S. Dist. LEXIS 211935, at *7

(cleaned up).  However, the employer's burden is higher under the NYLL.  The NYLL "does not

permit an employer to discharge this burden by undermining the reasonableness of an employee's

evidence that he was underpaid. . . . An employer must demonstrate that it in fact paid its

employees" everything that is owed to them under the law. *Galvez v. 800 Ginza Sushi, Inc.*, No.

19 Civ. 8549, 2022 U.S. Dist. LEXIS 43523, at *20 (S.D.N.Y. Mar. 11, 2022).

On a default motion, an employee's recollection of his or her hours worked is sufficient to

carry his or her initial burden, and "[a]bsent rebuttal by defendants, the employee's recollection and estimates of hours worked are presumed to be correct." *Schalaudek*, 2017 U.S. Dist. LEXIS 26272, at *12-13 (cleaned up); *see also*, *e.g.*, *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 232 (S.D.N.Y. 2020). Here, Plaintiffs have carried their burden through both documentary evidence and their sworn declarations.

### C. Summary Of Damages Sought

Although

> a plaintiff may be entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice. Instead, where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages.

*Caputi-Richards v. Chuck's Vintage, Inc.*, No. 22 Civ. 6409, 2023 U.S. Dist. LEXIS 62954, at *4-5 (S.D.N.Y. Apr. 11, 2023) (internal quotation marks omitted). In this case, Plaintiffs recover more under New York law than under the FLSA. Accordingly, before attorneys' fees and costs are added, Plaintiffs seek a total of $89,779.20 plus any prejudgment interest that accrues after July 11, 2024, which breaks down as follows:

| Category | Brand | Castro |
|---|---|---|
| Unpaid regular pay | $3,665.34 | $4,145.02 |
| Unpaid overtime | $963.63 | $525.69 |
| Unpaid spread of hours | $1,320 | $1,587.86 |
| Unpaid tips | $910.77 | $1,470.15 |
| Liquidated damages for all unpaid wages | $6,859.74 | $7,728.72 |
| Liquidated damages for late paid wages | $10,675.72 | $28,212.80 |
| NYLL § 195(1) statutory damages | $5,000 | $5,000 |
| NYLL § 195(3) statutory damages | $5,000 | $5,000 |
| Interest accrued as of July 11, 2024 | $778.06 | $935.70 |
| **Total as of July 11, 2024** | **$35,173.26** | **$54,605.94** |

(Schulman Decl. ¶ 10-28; Schulman Exs. 6-13.)   Nonetheless, below Plaintiffs describe the calculation of damages for all of their claims, including the minimum wage claims whose damages are subsumed in the above summary.

### i.  Unpaid agreed rate and overtime

The complaint and Plaintiffs' declarations establish that Plaintiff Brand worked and was not paid at all for the period from June 11, 2023 to July 29, 2023 and Plaintiff Castro was not paid for 10.3 hours in February 2023 or at all for the period from July 2, 2023 to July 28, 2023.  (Brand Decl. ¶¶ 23-24; Castro Decl. ¶¶ 14, 21-22.)  Plaintiffs have produced time records that reflect the majority of their unpaid hours worked.  (Brand Decl. ¶¶ 13-15; Brand Ex. 1; Castro Decl. ¶¶ 11-13; Castro Ex. 1.)  In addition, both Plaintiffs state in their declarations that they worked 9.35 hours on June 20, 2023 which are not included in their time records because Defendant Bedwell instructed them not to clock in, and Plaintiff Castro's declaration establishes that she worked 10.3 unpaid hours in February 2023.  (Brand Decl. ¶ 15; Castro Decl. ¶¶ 13-14.)  Plaintiffs also identify their agreed hourly rates in their declarations: $18 per hour for Brand and $22 per hour for Castro. (Brand Decl. ¶¶ 6-7; Castro Decl. ¶ 7-8.) Plaintiffs have calculated their unpaid agreed rate compensatory damages by multiplying their non-overtime hours worked in each week for which they have not been paid, as reflected in their time records and declarations, by the applicable agreed rate.  (Schulman Decl. ¶¶ 12-15; Schulman Exs. 7, 8.)

To calculate Plaintiffs' unpaid overtime compensation, Plaintiffs first calculated their respective overtime rates by multiplying their agreed rates by 1.5.  Each Plaintiff's resulting overtime rate was then multiplied by the overtime hours he or she worked in the weeks for which he or she received no payment, as reflected in the Plaintiffs' time records and declarations. (Schulman Decl. ¶¶ 13, 15; Schulman Exs. 7, 8.)

### ii.  Minimum wage

Plaintiffs' damage calculation also shows the FLSA and NYLL minimum wage compensatory damages in the event that the Court does not award damages based on their agreed rates.  The minimum wage compensatory damages are calculated by multiplying the relevant minimum wage ($7.25 federal minimum wage and $15 New York minimum wage) by each Plaintiff's non-overtime hours worked in each week for which they have not been paid, as reflected in their time records and declarations.[5]  (Schulman Decl. ¶¶ 12-15; Schulman Exs. 7, 8.)

### iii.  Spread of hours

In the time periods for which Plaintiffs have time records, Plaintiff Brand worked 16 shifts that lasted longer than 10 hours, and Plaintiff Castro worked 13 shifts that lasted longer than 10 hours.  (Brand Ex. 1; Castro Ex. 1; Schulman Decl. ¶ 21; Schulman Exs. 11, 12.)  For the time periods for which Plaintiffs do not have time records, Plaintiffs' state in their declarations that they worked three shifts per week that lasted longer than 10 hours.  (Brand Decl. ¶ 22; Castro Decl. ¶ 20.)  Thus, Plaintiffs' unpaid spread of hours compensation is $15 (the New York minimum wage) times 3 (number of spread of hours shifts per week) times their number of weeks worked for which they do not have time records.  (Schulman Decl. ¶ 22; Schulman Exs. 11, 12.)

### iv.  Misappropriated tips

The total amount of credit card tips collected by TQTO from November 1, 2022, when it first opened to customers, to July 29, 2023 was $3,508.99.  (Brand Decl. ¶ 9.)  The restaurant was open six days a week, or 233 days in total, during that period.  (Brand Decl. ¶ 10; Schulman Decl. ¶ 23; Schulman Ex. 13.)  Five to 10 percent of the time three employees worked per day, and the rest of the time two employees worked per day.  (Brand Decl. ¶ 11.)  To calculate their unpaid

---

[5] Under the FLSA and New York law, the overtime rate is calculated based on the agreed rate when that rate is higher than the minimum wage.  29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.

credit card tips, Plaintiffs divided the total credit card tip amount of $3,508.99 by the total number of days the restaurant was open from November 1, 2022 to July 29, 2023 to determine the average daily amount of credit card tips.  Using a staffing level of two employees per day 90 percent of the time and three employees per day 10 percent of the time results in an average staffing level of 2.1 employees per day.  Plaintiffs divided the average daily amount of credit card tips by 2.1 to determine their share of tips for every day that they worked.  Plaintiffs calculated the number of their workdays by counting the days on their time records and, for the period without time records, using the testimony in their declarations about the number of days they worked per week in the different periods of their employment.  Finally, Plaintiffs multiplied their total days worked by their share of tips for each workday to calculate their total unpaid credit card tips.  (Schulman Decl. ¶¶ 23-27; Schulman Ex. 13.)

### v.  Liquidated damages

Under the FLSA and NYLL, an employer will be liable for liquidated damages equal to the amount of unpaid wages unless it establishes the affirmative defense that it had a good faith belief that it was complying with the law. 29 U.S.C. §§ 216(b), 260; N.Y. Lab. L. §§ 198(1-a), 663(a); *Villanueva*, 500 F. Supp. 3d at 235 ("Both the FLSA and the NYLL provide for liquidated damages.").  To avoid mandatory liquidated damages under the FLSA and NYLL an employer must prove that it "took active steps to ascertain the dictates of the [law] and then act[ed] to comply with them," and "that its good-faith actions were objectively reasonable." *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 258 (S.D.N.Y. 2021) (internal citations omitted).  By virtue of their default, Defendants have "not provided any evidence to suggest [they] had a good faith basis to believe [their] underpayment complied with the law[,]" and Plaintiffs are entitled to liquidated damages equal to the amount of their unpaid wages. *Caputi-Richards*, 2023 U.S. Dist. LEXIS

62954, at *6.  These liquidated damages amounts are included in Plaintiffs' damages summary submitted as Schulman Ex. 6.

On their late payment claims, Plaintiffs are entitled to recover liquidated damages equal to the amount of the late paid wages.  *Vega*, 175 A.D.3d at 1145; *Bemejo v. Shaker Contrs., Corp.*, No. 22 Civ. 1427, 2022 U.S. Dist. LEXIS 213831, at *15 (S.D.N.Y. Nov. 28, 2022); Schulman Ex. 22 at 45 (discussing the State of New York's adopted 2024-2025 budget and noting that "[t]he Adopted Budget intentionally omits the Executive proposal to remove the allowance of liquidated damages in instances where a manual worker is paid bi-weekly instead of weekly, as currently required under Labor Law").  Plaintiffs' declarations and documentary evidence show that Plaintiff Brand was paid $1,279.80 late for the week ending June 10, 2023, and Plaintiff Castro was paid $960.30 late for the week ending July 1, 2023.  (Brand Decl. ¶ 24; Brand Ex. 2; Castro Decl. ¶ 22; Castro Ex. 2.)  For the period for which Plaintiffs have no documentary evidence, Plaintiffs' declarations establish that they were paid more than seven days after the end of the work week half of the time.  (Brand Decl. ¶ 9; Castro Decl. ¶ 8.)  Plaintiffs have also identified the average number of days they worked per week in the periods for which they do not have time records.  (Brand Decl. ¶¶ 20-21; Castro Decl. ¶ 19.)  To determine the amount of late paid wages, Plaintiffs first calculated the average number of hours worked per shift based on their time records, and then multiplied this number by the number of days worked in the relevant periods to determine the total hours worked per week.[6]  Each Plaintiff's weekly non-overtime hours were multiplied by their agreed hourly rate ($22 for Castro, $18 for Brand), and the weekly overtime hours were multiplied by one and a half times the regular rate.  This weekly number was then calculated by half of the

---

[6] Because Plaintiff Brand's schedule changed on April 25, 2023, his weekly hours worked were calculated separately for the period from December 17, 2022 to April 24, 2023 and April 25, 2023 to June 3, 2023.  (Brand Decl. ¶¶ 20-21; Schulman Decl. ¶ 18.)

17

weeks worked in the relevant period to determine the total amount of late paid wages/liquidated damages in the relevant period. The subtotals from each period were added together to determine each Plaintiff's total liquidated damages for late paid wages. (Schulman Decl. ¶¶ 16-20; Schulman Exs. 9, 10.)

### vi. Penalties for N.Y. Lab. L. § 195 violations

The penalty for a violation of N.Y. Lab. L. § 195(1) is $50 per workday, up to a maximum of $5,000. N.Y. Lab. L. § 198(1-b). The penalty for a violation of N.Y. Lab. L. § 195(3) is $250 per workday, up to a maximum of $5,000. N.Y. Lab. L. § 198(1-d). Here, Plaintiffs' declarations and documentary evidence establish that they each worked at least 100 days, which entitles them to the maximum damages of $5,000 for N.Y. Lab. L. § 195(1), (3) violations. (Brand Decl. ¶¶ 2, 20, 21; Brand Ex. 1; Castro Decl. ¶¶ 2, 19; Castro Ex. 1; Schulman Decl. ¶ 28; Schulman Ex. 13.)

### vii. Prejudgment interest

Plaintiffs are entitled to prejudgment interest on their compensatory damages for NYLL violations at the statutory annual rate of 9%. N.Y. Lab. L. §§ 198(1-a), 663(1); N.Y. C.P.L.R. §§ 5001, 5004; *Caputi-Richards*, 2023 U.S. Dist. LEXIS 62954, at *7; *Pena*, 2021 U.S. Dist. LEXIS 211935, at *11. Interest in NYLL cases is ordinarily calculated from the midpoint of a plaintiff's employment. *E.g.*, *Pena*, 2021 U.S. Dist. LEXIS 211935, at *11. March 8, 2023 is the midpoint of Plaintiff Castro's employment (October 17, 2022 to July 28, 2023), and April 8, 2023 is the midpoint of Plaintiff Brand's employment (December 17, 2022 to July 29, 2023). (Brand Decl. ¶ 2; Castro Decl. ¶ 2.) Each Plaintiff's daily interest rate is calculated by multiplying his or her total compensatory damages for unpaid regular pay, overtime pay, spread of hours pay, and tips by 9% and dividing the result by 365. Brand's daily interest rate is therefore $1.69 (compensatory damages of $6,859.74 * 0.09 / 365), and his accrued interest from April 8, 2023 to July 11, 2024

18

is $778.06.  Castro's daily interest rate is $1.91 (compensatory damages of $7,728.72 * 0.09 / 365), and her accrued interest from March 8, 2023 to July 11, 2024 is $935.70.  (Schulman Ex. 6.)

### viii.   15% penalty if judgment is not timely paid

The NYLL provides that any portion of a judgment that "remain[s] unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is pending, whichever is later, . . . shall automatically increase by fifteen percent."  N.Y. Lab. L. §§ 198(4), 663(4).  Accordingly, Plaintiffs' proposed judgment incorporates this provision.  *See Caputi-Richards*, 2023 U.S. Dist. LEXIS 62954, at *17; *Pena*, 2021 U.S. Dist. LEXIS 211935, at *11-12.

## V.    ATTORNEYS' FEES AND COSTS

Under the FLSA and NYLL, a prevailing plaintiff is entitled to an award of attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Lab. L. §§ 198, 663.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008).  Prior to *Arbor Hill*, this amount was known as the "lodestar" amount, which the Second Circuit has suggested be known going forward as the "presumptively reasonable fee."  *Id.* at 183; *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 U.S. Dist. LEXIS 109373, at *22-23 (S.D.N.Y. Sept. 30, 2010)

With respect to determining a reasonable hourly rate, the Second Circuit has held that the term means "what a reasonable, paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 184; *Cao*, 2010 U.S. Dist. LEXIS 109373, at *23-24.  The rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (citation omitted).  In considering the appropriate rate, the Court may also use its own knowledge of the relevant market.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006).

Plaintiff's attorneys have submitted a compilation of their time records for the Court's consideration and have included a chart breaking down the hours and requested rates for each attorney who worked on this matter.  (Schulman Decl. ¶¶ 38; Schulman Ex. 14.)  Plaintiffs' counsel exercised billing judgment to omit 4.9 paralegal/administrative assistant hours and more than 4.5 attorney hours.  (Schulman Decl. ¶ 38.)  Based on these records, Plaintiffs respectfully request $11,350 in attorneys' fees for 22.4 attorney hours and 1.2 paralegal hours.  The Court should find that the hours spent on this case were reasonable under the circumstances and include every hour expended in its calculation of the presumptively reasonable fee.

Here, Plaintiffs' counsel are attorneys with considerable experience in wage and hour cases.  The two attorneys who worked on this case – D. Maimon Kirschenbaum and Denise A. Schulman – are partners at Joseph & Kirschenbaum LLP, a plaintiffs'-side employment law firm, and each have more than 15 years of experience representing employees in wage and hour matters.  (Schulman Decl. ¶¶ 29-37.)  Courts have repeatedly recognized Plaintiffs' counsel's skill and expertise in wage and hour litigation.  *E.g.*, *Orlando v. Liberty Ashes, Inc.*, No. 15 CV 9434, at 10:18-20 (S.D.N.Y. Sept. 4, 2020) ("[I]n my entire experience with [Ms. Schulman] in this case, and a lot of others, she's always been among the very best lawyers in this case.") (transcript attached as Schulman Ex. 17); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008, at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (transcript attached as

Schulman Ex. 18).  Mr. Kirschenbaum and Ms. Schulman have recently been awarded fees in this District at a rate of $500 and seek that rate here.  (*See* Schulman Ex. 19 at 17:9-24; Schulman Ex. 20 at 32-33; Schulman Ex. 21 at 4.)  Plaintiffs also seek fees for 1.2 paralegal hours at a rate of $125.  This rate has recently been approved in this District.  (Schulman Ex. 19 at 17:23-24.)

Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  Here, Plaintiffs seek recovery of the filing fee ($405) and service of process on Defendants ($462.62), and translation services ($390), for a total of $1,257.62.  (Schulman Decl. ¶¶ 39-40; Schulman Ex. 15.)

## VI.    CONCLUSION

Therefore, Plaintiffs seek total damages of **$89,779.20**, plus all prejudgment interest that accrues after July 11, 2024, as well as **$12,607.62** ($11,350 + $1,257.62) in attorneys' fees and costs.

WHEREFORE, Plaintiffs request that a default judgment be entered against Defendants TQTO Corp. and Joseph Bedwell.


Dated:  New York, New York
      July 11, 2024                                    /s/ Denise A. Schulman
                                                              D. Maimon Kirschenbaum
                                                              Denise A. Schulman
                                                               32 Broadway, Suite 601
                                                              New York, NY 10004
                                                               Tel: (212) 688-5640
                                                              Fax: (212) 981-9587

                                                              *Attorneys for Plaintiffs*

21